716 So.2d 783 (1998)
Lawrence D. McDOUGALD, Petitioner,
v.
Henry D. PERRY and C & S Chemicals, Inc., Respondents.
No. 91595.
Supreme Court of Florida.
September 4, 1998.
*784 Hank B. Campbell and Christine C. Daly of Lane, Trohn, Bertrand & Vreeland, P.A., Lakeland, and Raymond Ehrlich and Scott D. Makar of Holland & Knight, Jacksonville, for Petitioner.
Douglas M. Fraley and Margie I. Fraley of Fraley and Fraley, P.A., Tampa, for Respondent.
WELLS, Justice.
We have for review Perry v. McDougald, 698 So.2d 1256 (Fla. 2d DCA 1997), which conflicts with Cheung v. Ryder Truck Rental, Inc., 595 So.2d 82 (Fla. 5th DCA 1992). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Lawrence McDougald sued Henry Perry and Perry's employer, C & S Chemical, Inc., (collectively referred to as respondents), for personal injuries sustained in an accident which occurred on July 26, 1990, on U.S. Highway 60 West, in Bartow, Florida. On July 26, McDougald was driving behind a tractor-trailer which was driven by Perry. The trailer was leased by C & S from Ryder Truck Rentals, Inc. As Perry drove over some railroad tracks, the 130-pound spare tire came out of its cradle underneath the trailer and fell to the ground. The trailer's rear tires then ran over the spare, causing the spare to bounce into the air and collide the windshield of McDougald's Jeep Wagoneer.
The spare tire was housed in an angled cradle underneath the trailer and was held in place by its own weight. Additionally, the tire was secured by a four to six-foot long chain with one-inch links, which was wrapped around the tire. Perry testified that he believed the chain to be the original chain that came with the trailer in 1969. Perry also stated that, as originally designed, the chain was secured to the body of the trailer by a latch device. At the time of the accident, however, the chain was attached to the body of the trailer with a nut and bolt.
Perry testified that he performed a pretrip inspection of the trailer on the day of the accident. This included an inspection of the chain, although Perry admitted that he did not check every link in the chain. After the accident, Perry noticed that the chain was dragging under the trailer. Perry opined that one of the links had stretched and slipped from the nut which secured it to the trailer.[1] The judge instructed the jury on the doctrine of res ipsa loquitur. The jury subsequently returned a verdict in McDougald's favor.
On appeal, the district court reversed with instructions that the trial court direct a verdict in respondents' favor. The district court concluded that the trial court erred by: (1) not directing a verdict on the issue of negligence; (2) instructing the jury on res ipsa loquitur; and (3) not directing a verdict on the issue of past and future loss of earning capacity. Perry v. McDougald, 698 So.2d 1256, 1258 (Fla. 2d DCA 1997). We granted McDougald's petition for review to resolve the conflict in the application of the doctrine of res ipsa loquitur.[2] For the reasons expressed herein, we quash the decision below and approve the Fifth District's application of res ipsa loquitur to the circumstances of a wayward automobile wheel accident.
This Court discussed the applicability of the doctrine of res ipsa loquitur in Marrero v. Goldsmith, 486 So.2d 530 (Fla.1986); City of New Smyrna Beach Utilities Commission v. McWhorter, 418 So.2d 261 (Fla.1982); and Goodyear Tire & Rubber Co. v. Hughes Supply, *785 Inc., 358 So.2d 1339, 1341 (Fla.1978). In Marrero, we stated:
Res ipsa loquitur is a Latin phrase that translates "the thing speaks for itself." Prosser and Keaton, Law of Torts § 39 (5th ed.1984). It is a rule of evidence that permits, but does not compel, an inference of negligence under certain circumstances. "[T]he doctrine of res ipsa loquitur is merely a rule of evidence. Under it an inference may arise in aid of the proof." Yarbrough v. Ball U-Drive System, 48 So.2d 82, 83 (Fla.1950). In Goodyear, a products liability case, we explained the doctrine as follows:
It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control.

Goodyear, 358 So.2d at 1341-42, (footnotes omitted).
Marrero, 486 So.2d at 531.
In concluding that it was reversible error for the trial court to give the res ipsa loquitur instruction, the Second District determined that "McDougald failed to prove that this accident would not, in the ordinary course of events, have occurred without negligence by the defendants." McDougald, 698 So.2d at 1259 (citing Goodyear). The court explained that, "[t]he mere fact that an accident occurs does not support the application of the doctrine." Id. In support of the Second District's conclusion, respondents cite to Burns v. Otis Elevator Co., 550 So.2d 21 (Fla. 3d DCA 1989), in which the Third District stated:
To prevail at trial, plaintiff must still present sufficient evidence, beyond that of the accident itself, from which the jury may infer that the accident would not have occurred but for the defendants' breach of due care.
Id. at 22. Respondents assert that this language means that res ipsa loquitur did not apply in this case because "there was no expert or other testimony or evidence that the failure of the safety chain and the spare tire's exit onto the roadway would not ordinarily occur in the absence of [respondents'] negligence." Answer Brief of Respondents at 19.
The Second and Third Districts misread and interpret too narrowly what we stated in Goodyear. We did not say, as those courts conclude, that "the mere fact that an accident occurs does not support the application of the doctrine." Rather, we stated:
An injury standing alone, of course, ordinarily does not indicate negligence. The doctrine of res ipsa loquitur simply recognizes that in rare instances an injury may permit an inference of negligence if coupled with a sufficient showing of its immediate, precipitating cause.

Goodyear, 358 So.2d at 1342 (emphasis added). Goodyear and our other cases permit latitude in the application of this common-sense inference when the facts of an accident in and of themselves establish that but for the failure of reasonable care by the person or entity in control of the injury producing object or instrumentality the accident would not have occurred. On the other hand, our present statement is not to be considered an expansion of the doctrine's applicability. We continue our prior recognition that res ipsa loquitur applies only in "rare instances."
The following comments in section 328D of Restatement (Second) of Torts (1965) capture the essence of a proper analysis of this issue:

c. Type of event. The first requirement for the application of the rule stated in this Section is a basis of past experience which reasonably permits the conclusion that such events do not ordinarily occur unless someone has been negligent. There are many types of accidents which commonly occur without the fault of anyone. The fact that a tire blows out, or that a man falls down stairs is not, in the absence of anything more, enough to permit the conclusion that there was negligence in inspecting the tire, or in the construction *786 of the stairs, because it is common human experience that such events all too frequently occur without such negligence. On the other hand there are many events, such as those of objects falling from the defendant's premises, the fall of an elevator, the escape of gas or water from mains or of electricity from wires or appliances, the derailment of trains or the explosion of boilers, where the conclusion is at least permissible that such things do not usually happen unless someone has been negligent. To such events res ipsa loquitur may apply.

d. Basis of conclusion. In the usual case the basis of past experience from which this conclusion may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts which everyone knows. It may, however, be supplied by the evidence of the parties; and expert testimony that such an event usually does not occur without negligence may afford a sufficient basis for the inference. Such testimony may be essential to the plaintiff's case where, as for example in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion. On the other hand there are other kinds of medical malpractice, as where a sponge is left in the plaintiff's abdomen after an operation, where no expert is needed to tell the jury that such events do not usually occur in the absence of negligence.
Restatement (Second) of Torts § 328D cmts. c-d (1965).
We conclude that the spare tire escaping from the cradle underneath the truck, resulting in the tire ultimately becoming airborne and crashing into McDougald's vehicle, is the type of accident which, on the basis of common experience and as a matter of general knowledge, would not occur but for the failure to exercise reasonable care by the person who had control of the spare tire. As the Fifth District noted, the doctrine of res ipsa loquitur is particularly applicable in wayward wheel cases. Cheung; see also Guerra v. W.J. Young Constr. Co., 165 So.2d 882 (La.Ct.App.1964); Dearth v. Self, 8 Ohio App.2d 33, 220 N.E.2d 728 (1966); Wilson v. Spencer, 127 A.2d 840, 841 (D.C.1956) ("Thousands of automobiles are using our streets, but no one expects the air to be filled with flying hubcaps."). We do not agree with respondent that Cheung can be properly distinguished on the basis that in Cheung the escaped tire was attached to the axle, whereas in this case the escaped tire was a spare cradled underneath the truck. Rather, common sense dictates an inference that both a spare tire carried on a truck and a wheel on a truck's axle will stay with the truck unless there is a failure of reasonable care by the person or entity in control of the truck. Thus an inference of negligence comes from proof of the circumstances of the accident.
Furthermore, we do not agree with the Second District that McDougald failed to establish this element because "[o]ther possible explanations exist to explain the failure of the chain." McDougald, 698 So.2d at 1260. Such speculation does not defeat the applicability of the doctrine in this case. As one commentator has noted:
The plaintiff is not required to eliminate with certainty all other possible causes or inferences.... All that is required is evidence from which reasonable persons can say that on the whole it is more likely that there was negligence associated with the cause of the event than that there was not.
W. Page Keeton, et al., Prosser and Keaton on the Law of Torts, § 39, at 248 (5th ed.1984).
Respondents also contend that the res ipsa instruction was inapplicable because McDougald failed to prove that direct evidence of negligence was unavailable. Respondents cite to Goodyear for the proposition that res ipsa is not applicable where "the facts surrounding the incident were discoverable and provable." This statement from Goodyear was made in a products liability tire blow-out case in which the plaintiff was in possession and control of the injury-causing device. In that case, the plaintiff, who was in possession of the product alleged to have been negligently manufactured, was in the best position to determine the alleged *787 cause of the accident. Thus, the res ipsa inference was not applicable. Here, unlike Goodyear, we find that there was insufficient evidence available to McDougald. The likely cause of this accident, the chain and securing device, were in the exclusive possession of respondents and were not preserved. Moreover, this was not the basis upon which the Second District held res ipsa loquitur to be inapplicable.
Accordingly, we quash the decision below, and remand this case with directions that the district court reinstate the trial court's judgment as to respondents' liability based upon the jury's verdict and for further proceedings consistent with the district court's decision on issues related to damages.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN and PARIENTE, JJ., concur.
ANSTEAD, J., concurs with an opinion.
ANSTEAD, Justice, concurring.
I fully concur in the majority opinion, and write separately to note that this case presents a classic scenario whereby an aged appellate opinion giving rise to a legal doctrine in the distant past still illuminates and informs today's society. The thread of common sense in human experience ties today's decision to an opinion voiced by Baron Pollock in the 1863 decision in Byrne v. Boadle, 2 Hurlet & C. 722, 159 Eng. Rep. 299 (Ex. 1863). In Byrne a pedestrian was struck by a barrel which fell from a window of the defendant's flour business. In reversing a directed verdict against the plaintiff, Pollock declared for the Court:
We are all of opinion that the rule must be absolute to enter the verdict for the plaintiff. The learned counsel was quite right in saying that there are many accidents from which no presumption of negligence can arise, but I think it would be wrong to lay down as a rule that in no case can presumption of negligence arise from the fact of an accident. Suppose in this case the barrel had rolled out of the warehouse and fallen on the plaintiff, how could he possibly ascertain from what cause it occurred? It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out, and I think that such a case would, beyond all doubt, afford prima facie evidence of negligence. A barrel could not roll out of a warehouse without some negligence, and to say that a plaintiff who is injured by it must call witnesses from the warehouse to prove negligence seems to me preposterous. So in the building or repairing a house, or putting pots on the chimneys, if a person passing along the road is injured by something falling upon him, I think the accident alone would be prima facie evidence of negligence. Or if an article calculated to cause damage is put in a wrong place and does mischief, I think that those whose duty it was to put it in the right place are prima facie responsible, and if there is any state of facts to rebut the presumption of negligence, they must prove them. The present case upon the evidence comes to this, a man is passing in front of the premises of a dealer in flour, and there falls down upon him a barrel of flour. I think it apparent that the barrel was in the custody of the defendant who occupied the premises, and who is responsible for the acts of his servants who had the control of it; and in my opinion the fact of its falling is prima facie evidence of negligence, and the plaintiff who was injured by it is not bound to shew that it could not fall without negligence, but if there are any facts inconsistent with negligence it is for the defendant to prove them.
We can hardly improve upon this explanation for our decision today. The common law tradition is alive and well.
NOTES
[1] Perry testified that the last time he saw the chain was when he left the trailer at a repair shop in Waycross, Georgia. As the district court opinion notes, however, spoliation of evidence was not an issue in this case.
[2] We decline to address the other issues raised by the parties.